Alan I. Nahmias, Esq., State Bar No. 125140
Scott H. Noskin, Esq., State Bar No. 164923
**MIRMAN, BUBMAN & NAHMIAS, L.L.P.**
21860 Burbank Boulevard, Suite 360
Woodland Hills, California 91367
Telephone:    (818) 995-2555
Facsimile:    (818) 451-4620
Email:         anahmias@mbnlawyers.com

Attorneys for STANLEY K.S. and
CAROLYN J. CHING

(SPACE BELOW FOR FILING STAMP ONLY)

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA, SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In Re:<br><br><br>STEVEN NIA<br><br><br><br>        Debtor.<br>_____ | Case No. 1:17-bk-11495-VK<br><br>Chapter 11<br><br>OPPOSITION TO DEBTOR'S MOTION FOR NEW TRIAL AND FOR RECONSIDERATION OF ORDER GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY (REAL PROPERTY); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>[Filed Concurrently With Declarations of Daniel Goldberg, Stanley K.S. Ching and Alan I. Nahmias, and Request for Judicial Notice]<br><br>DATE:         August 22, 2018<br>TIME:         9:30 a.m.<br>CTRM.:         301 |

///
///
///
///
///
///

{00519256}

# TABLE OF CONTENTS

I.     INTRODUCTION ....................................................... 7

II.    GROUNDS DO NOT EXIST FOR AMENDING THE ORDER
       UNDER FRCP 59(e) ................................................. 8

       A.     Purported Errors of Fact in Granting Relief Under
              11 U.S.C. §362(d)(4) ...................................... 8

       B.     Purported Errors of Fact in Granting Relief Under
              11 U.S.C. §362(d)(1) and (2) ............................. 11

              1.     Issue of Equitable Interest ...................... 11

              2.     Issue of Equity .................................. 12

       C.     Purported Errors of Law .................................. 14

       D.     Purported Contradiction in the Ching Motion
              Concerning Amounts Owed .................................. 14

       E.     Annulment ................................................ 14

III.   THE DEBTOR'S CONTINUED BAD FAITH -
       NEWLY DISCOVERED EVIDENCE ....................................... 16

IV.    RELIEF IS NOT APPROPRIATE PURSUANT TO FRCP 59 ................... 20

V.     THE DEBTOR CANNOT OBTAIN RELIEF PURSUANT TO FRCP 60(b)(1) ....... 22

       Danger of Prejudice to the Opposing Party ...................... 22

       The Length of Delay and its Potential Impact on the Proceedings ... 22

       Reason of the Delay ............................................ 23

       Whether the Debtor Acted in Good Faith ......................... 23

VI.    CONCLUSION ...................................................... 24

## TABLE OF AUTHORITIES

CASES

Allstate Ins. Co. v. Herron
    634 F.3d 1101, 1111 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Fjeldsted
    293 B.R. 12 (9th Cir. BAP 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 15

In re Gonzales
    2014 WL 1338107 (Bankr. N.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Kona Enterprises, Inc. v. Estate of Bishop
    229 F.3d 877, 890 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Pioneer Inv. Serv. Co. v. Brunswick Associates Limited Partnership
    507 U.S. 380, 395, 113 S.Ct. 1489 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

389 Orange Street Partners v. Arnold
    179 F.3d 656, 665 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

In re Searles
    317 B.R. 368, 377-78 (9th Cir. BAP 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

STATUTES

11 U.S.C. §§362(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11, 12
11 U.S.C. §362(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11, 12
11 U.S.C. §362(d)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 9, 10

RULES

Fed. R. Civ. Pro. 59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Fed. R. Civ. Pro. 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 20, 24
Fed. R. Civ. Pro. 60(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 22
Fed. R. Civ. Pro. 60(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

1    COME NOW, Stanley K. S. and Carolyn J. Ching ("Chings") who oppose Debtor's Motion

2    for New Trial and for Reconsideration of Order Granting Motion for Relief from Automatic Stay

3    (Real Property) ("Motion to Reconsider") and object to the admission of any and all documents

4    submitted by Debtor in support of his Motion as late filed, based upon the following:

5        Debtor and his counsel were timely served with the Ching's Motion for Relief from the

6    Automatic Stay ("Ching Motion"). The Ching Motion was supported by substantial evidence in the

7    form of various Declarations and Exhibits, which included a new appraisal of the property located at

8    24485 Park Granada, Calabasas, California 91302 ("Calabasas Property"), transcripts from various

9    prior hearings and 341(a) meetings, along with numerous case law citations, and a Request for

10    Judicial Notice containing numerous pleadings already on file in this case, as well as several on file in

11    both the Debtor's second bankruptcy, Case No. 1:17-bk-12749-VK, and the related case of Illusion

12    Ventures, LLC, Case No. 1:17-bk-10926-VK.

13        In response, the Debtor submitted a late-filed Opposition consisting of less than two pages,

14    appeared telephonically at the hearing, offering no argument in response to the Court's lengthy and

15    well-reasoned tentative ruling, despite being provided an opportunity to do so, and for the first time at

16    the hearing, sought a continuance of the hearing on the matter. The Debtor made no attempt to rebut

17    any of the evidence presented or argue against any of the case law cited by the Ching Motion in

18    support of their arguments set forth in the Motion. Also missing from the Debtor's Opposition was

19    any mention at all of any purported inconvenience the June 6, 2018 deadline for filing the Opposition

20    may have caused for the Debtor or his counsel. Nor was any reference made to any attempt at seeking

21    a continuance prior to the time of the hearing, either by Debtor's counsel contacting the Chings'

22    counsel, or failing those efforts, through Debtor's counsel bringing an emergency motion before the

23    Court in an attempt to accomplish the same result. This is because no such efforts were undertaken.

24        Perhaps most importantly, as this Opposition will clearly demonstrate, the Debtor does not

25    come close to satisfying any of the requirements that a party seeking this extraordinary relief must

26    show if such a Motion is to have any chance of success. There has been no new evidence provided in

27    support of Debtor's Motion to Reconsider, and as all documentation now provided by the Debtor in

28    support of his Motion was available to him previously, it should be disregarded at this time as nothing

more than further late filed opposition to the Ching Motion, as all of it, including the appraisal he now provides, could have been filed in support of his Opposition.

Debtor could have raised each of the arguments in his opposition to the Ching Motion, but he failed to do so. The Local Rules, Bankruptcy Rules and the Bankruptcy Code do not allow a party to supplement its opposition after the Court has ruled, which in effect the Debtor has done via the Motion to Reconsider. No information has been provided by the Debtor or his counsel as to when Mr. McConnell was asked to appraise the Calabasas Property, or why it was only filed along with the Motion to Reconsider. The Debtor could have contacted the appraiser shortly after May 30, the day the motion was filed, but they obviously did not as he did not appraise the Calabasas Property until July 10, forty-one (41) days after the motion was filed. Further, as the Chings will demonstrate, the McConnell appraisal, even if it is considered by the Court, is of no benefit to the Debtor.

The Debtor now realizes the full consequences of the granting of the Ching Motion and seeks another bite at the apple, hoping to portray himself as a victim and someone who will suffer irreparable harm if he cannot somehow convince the Court to reverse its ruling. This Debtor, however, through his own dishonesty and attempted manipulation of events, as well as his numerous omissions and acts of deception, has brought his current reality on himself.

Further information pertaining directly to this Debtor discovered since the filing of the Debtor's Motion and discussed in more detail below will only further demonstrate to this Court that the only thing this Debtor deserves at this time is the denial of this Motion and the revocation of his discharge.

In summary, the Chings have learned that the Debtor appears to be leading a double life, as Steven Nia, as well as under what is believed to be his given name, M. Syamak Shafi-Nia. This was discovered in an attempt to locate a record of his time admitted to practice law as an attorney in California, of which the State Bar had no record. This led to a lengthy search by the Chings, who ultimately located a record of the Debtor having been admitted to practice law under the name M. Syamak Shafi-Nia, but surrendering that license with at least five counts of disciplinary charges pending for various alleged ethical violations and alleged violations of various sections of the California Business and Professions Code.

1    That in turn led to various searches of the Debtor under his other name, which turned up three

2    prior bankruptcy filings, all of which used a Social Security Number ending in 9511. Each of the two

3    bankruptcy cases the Debtor has filed as Steven Nia have identified a Social Security Number ending

4    in 7712. True and correct copies of the face pages of the two available Petitions, with partially

5    redacted Social Security Numbers, are attached as Exhibit "E" to the Declaration of Alan I. Nahmias

6    and incorporated herein by this reference.

7    Additionally, through a review of the Debtor's own online biography, other leads were

8    developed and are discussed further herein in Section III of the Points and Authorities entitled The

9    Debtor's Continued Bad Faith-Newly Discovered Evidence.

10    This Court can no longer condone this conduct or allow the Debtor to circumvent the

11    Bankruptcy Rules, the Bankruptcy Code or Ninth Circuit case law, through this Motion to

12    Reconsider, which is nothing but an extremely late filed Opposition, which the Debtor hopes will

13    make up for the lack of a record on appeal that he currently faces, should this Motion be denied. In

14    addition to the fact that nothing presented by the Debtor in the Motion to Reconsider was unavailable

15    to the Debtor or his counsel, or is otherwise new as of the time leading up to the filing of the Ching

16    Motion, there has been no change in controlling law, nor has any of the neglect that may have

17    occurred been excusable. The Debtor and his counsel may have been involved in a dispute, but his

18    counsel, a long experienced practitioner in the bankruptcy community, had an ongoing duty to

19    represent him to the best of his abilities, and he did so, even taking an extra day beyond that provided

20    by the Rules, to file the Opposition. None of this was caused by the Chings, nor should they be

21    burdened with the continued costs of shouldering the Debtor's outrageous conduct.

22    The Court did not commit any error with respect to the facts or the law in adjudicating the

23    Ching Motion. This will be addressed in further detail in the attached points and authorities, but the

24    Debtor is merely throwing anything and everything against the wall, questioning this Court's

25    knowledge and judgment, hoping that something will stick.

26    At the hearing on the Ching Motion, the Court found that the Calabasas Property was no

27    longer property of the estate as a result of the Trustee selling his interest in the Calabasas Property to

28    the Debtor, and that even if it was, still found grounds existed for granting relief under section

{00519256} {00519256} {00519256}                    3

362(d)(1), stating in its ruling that the Chings' interest in the Property was not adequately protected as the Debtor had not made monthly payments or paid property taxes for two years. Debtor does not dispute this in his Motion to Reconsider. Rather, he tries to muddy the water in questioning what is a clear statement from the Court, arguing in paragraphs 17 and 18 of the Motion to Reconsider at page 4, line 26 and page 5, line 17, that the Court's use of the word "several" creates judicial error even though the Court elsewhere in its ruling recited the correct evidence (see page 9 of tentative ruling, adopted by the Court as its final ruling) as provided by the Chings, that no payments had been made in the past two years. That was the evidence the Court relied on and its use of the word "several" versus the phrase "a couple" does not and should not change its finding. Further, the Court, at the time of the hearing on the Ching Motion, again acknowledged and emphasized that there were no payments being made and property taxes were not paid. The Court also found that the Debtor's failure to comply with his statutory obligations led to the dismissal of this chapter 7 case, prior to the order being vacated and the case being reinstated.

Finding that the Calabasas Property was not Property of the Estate as a result of the Trustee's sale of the estate's interest in the same to the Debtor, the Court did not make any findings under section 362(d)(2), finding that the request for relief under section 362(d)(2) was moot due to the aforementioned sale, and therefore, any argument made by the Debtor (see 7, line 23 of Motion to Reconsider) that the Court erred under this section is irrelevant.

The Court also properly found that multiple bankruptcies had affected the Calabasas Property, specifically, the Illusion Ventures bankruptcy as well as the Debtor's two bankruptcy cases. The Court found under the totality of the circumstances, the Debtor's case was part of a scheme to delay, hinder or defraud the Chings that involved multiple bankruptcies. The Debtor does not dispute that there were multiple filings affecting the Property, because it is indisputable. Further, and of great importance, whether the Debtor maintained an equitable interest in the Calabasas Property was not a factor in the Court's finding of lack of good faith. The Debtor argues that the Court committed error in finding bad faith under section 362(d)(4), but the record is clear on his actions.

- He had not made any payments to the Chings or paid property taxes for at least two years, while his wife and child resided in the Calabasas Property and he lived in the

Encino residence (in which he lived mortgage and rent free for five (5) years while collecting $2,000 per month for subletting a portion of the residence to Rabbi Manssouri);

- Debtor failed to file the documents required under the Bankruptcy Rules causing the dismissal of his case;

- The Court found the Debtor was not an appropriate fiduciary,

- The Court found the Debtor did not comply with his duties as a debtor in a timely fashion, did not accurately disclose his assets and liabilities and was not in compliance with the U.S. Trustee's requirements;

- Debtor filed a second Chapter 11 case, after the Court found he was not an appropriate fiduciary in this case, and then actively contested the attempts of the United States Trustee to vacate the order of dismissal and reinstate this case;

- Debtor did not first appear for his meeting of creditors until approximately 6 months after the case was converted to Chapter 7 and his meeting of creditors has still not been completed;

These facts and prior findings of the Court were submitted and received into evidence in connection with the Ching Motion. While undisputable, the Debtor may try to challenge these findings now, but he had the opportunity to attempt to challenge any or all of these items in his opposition, electing not to do so, while also failing to raise any of these concerns at the June 20th hearing. Based on these aforementioned facts, it was not error for the Court to find the Debtor's filing was part of a scheme to hinder, delay or defraud creditors that involved multiple bankruptcy filings affecting the Calabasas Property.

The Court's ruling states that annulment of the stay was warranted because under the totality of the circumstances, it appeared that the Debtor had not acted in good faith. The Ching Motion provided a thorough analysis of the twelve steps examined in In re Fjeldsted, 293 B.R. 12, 25, each one easily favoring the Chings and annulment of the stay. In that regard, the Court's ruling states that "[A] review of the Fjeldsted factors shows that annulment of the automatic stay is warranted." While the Court's ruling specifically discusses some of the facts, it does not discuss each of them. As

1  stated, however, the Court found that the totality of the facts demonstrated an intention by the Debtor

2  to delay and hinder creditors in this case, and specifically identifies some of those facts, such as his

3  failure to pay the Chings and his failure to comply with the bankruptcy laws causing the temporary

4  dismissal of the first bankruptcy case.

5       The Debtor's opposition to the Ching Motion failed to address any of the Fjeldsted factors,

6  and Debtor and his counsel have ignored the analysis in the Motion to Reconsider, seemingly

7  acknowledging it is now either too late to do so or that they cannot provide convincing arguments as

8  to any of the factors considered. This Court also found bad faith by the Debtor based on the evidence

9  provided by the Chings.  As mentioned above, in responding to this Motion, the Chings have

10 discovered additional evidence about the Debtor which, if possible, shows an even greater and more

11 serious lack of candor and good faith in connection with his bankruptcy cases, further demonstrating

12 that the Court did not previously commit error.  Rather, the only error this Court could make would

13 be to now fall prey to the ongoing fraud and deception of this Debtor, as the Debtor has not provided

14 a single reason for this Court to do anything other than deny the Debtor's Motion to Reconsider with

15 prejudice and grant such other and further relief to the Chings as it may deem just and proper.

Dated: August 8, 2018                    MIRMAN, BUBMAN & NAHMIAS, LLP


                                         By: _____
                                         ALAN I. NAHMIAS
                                         SCOTT H. NOSKIN
                                         Attorneys for Movants STANLEY K.S.
                                         and CAROLYN J.CHING

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

By filing this Motion, the Debtor is attempting to circumvent the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules as a result of his failure to file a substantive response to the Ching Motion. After contemplating the Court's ruling for two weeks and at the last possible minute, realizing the significant consequences, the Debtor now seeks another chance to oppose the Ching Motion since his initial attempt was completely ineffective. Unfortunately for the Debtor, failing to take the filing of an opposition seriously or comply with the time frame provided by the Rules to respond to a motion that all litigants that practice before this Court observe is not a basis for the granting of a Motion for Reconsideration. The Debtor's Motion for New Trial and for Reconsideration of Order Granting Motion for Relief from Automatic Stay ("Motion to Reconsider") is nothing more than a very late-filed opposition which accuses the Court of committing error when in fact no error was committed, and most importantly, in contravention of the statute which he seeks to rely upon, offers no supporting law, or for that matter anything approaching a valid rationale for what he did, or failed to do, when he was served with the Ching Motion.

The Debtor also presents this Court with less than a complete account of his conduct during and before this case, leaving out critical pieces of information that he is required to disclose, some only just discovered by the Chings, which once known to the Court, will further demonstrate that this Debtor is virtually incapable of telling the truth or participating in the administration of his own bankruptcy proceeding in any manner approaching good faith. The Debtor is a dishonest person who has repeatedly omitted material information from his schedules and made misrepresentations in his schedules, only amending his Petition once caught in lies, some of which this Court has recognized after previously being provided as evidence in the Ching Motion. The Debtor has also failed to comply with the rules imposed upon Debtors by the Bankruptcy Code and Rules, exhibiting conduct that should lead to an action seeking the revocation of his discharge.

///

///

## II.

## GROUNDS DO NOT EXIST FOR AMENDING THE ORDER UNDER FRCP 59(e)

A motion to amend or alter a judgment under Fed. R. Civ. Pro. 59(e), as sought by the Debtor, may be granted only on one of four grounds. When determining whether to grant such a Motion, courts in the Ninth Circuit typically examine four factors, as follows: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law. Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011).

The Debtor spends the majority of the Motion to Reconsider arguing that this Court committed both errors of fact and law which must be corrected. However, a close review of this Court's June 20, 2018 ruling demonstrates that there were no errors of either fact or law made by this Court. The Debtor spends virtually no time attempting to rebut any of the legal arguments made or argue that the cases cited in the Ching Motion are inapplicable, because they are not. The Debtor also argues he has exhibited good faith and cooperated in the administration of this bankruptcy case. Nothing could be further from the truth.

### A.    Purported Errors of Fact in Granting Relief Under 11 U.S.C. §362(d)(4)

Debtor argues there were errors of fact in connection with the Court's findings in relation to 11 U.S.C. §362(d)(4). (See page 4, line 21 of Motion to Reconsider). In granting relief under section 362(d)(4) the Court found that under the totality of the circumstances, the Debtor's case was part of a scheme to delay, hinder or defraud the Chings that involved multiple bankruptcies. When considering the totality of the circumstances the Court considered all of the evidence provided by the Chings which included, among other things, evidence showing the following:

- The Court found the Debtor did not comply with his duties as a debtor in a timely fashion, did not accurately disclose his assets and liabilities and was not in compliance with the U.S. Trustee's requirements.

    This is factually correct and supported by evidence provided in the Ching Motion;

- Once this case was dismissed due to the Debtor's failure to comply with his statutory obligations, within a matter of a few hours, the Debtor filed another Chapter 11 case, after the Court had already found that he was not an appropriate fiduciary in his first case. Thereafter, rather than stipulating to vacate the Order of Dismissal of this case, he actively opposed it, in spite of the Court's prior findings and his having no ability to reorganize.

This is factually correct and undisputed by the Debtor in his Motion.

- Debtor had not made any payments to the Chings or property taxes for at least two years while his wife and family resided in the Calabasas Property.

This is factually correct and undisputed by the Debtor in his Motion.

While the Debtor attempts to demonstrate that he complied with statutory duties (See paragraph 18, page 6, lines 22-28 and page 7, lines 1-15), now is not the time to try and dispute the evidence provided to the Court with information that was available to him at the time his Opposition was due[1]. More importantly, the items referred to above were not findings first made by the Court at the June 20th hearing. They were each for the most part, a portion of a long record based upon the Debtor's own conduct leading up to the filing of this case and thereafter, the cumulative effect of which provided the Court with what it relied upon in arriving at its ruling.

The Debtor does not dispute there were multiple bankruptcy filings, but instead attempts to explain his purposes behind the filings (See paragraph 18, page 5, lines 4-13). This does not change the fact that there were multiple filings affecting the Calabasas Property and the Court so found, which after this Court had already found this Debtor could not serve as a debtor-in-possession, are irrelevant, let alone procedurally inappropriate. Basing such a finding in part on the multiple filings is, therefore, in no way error. Rather, it is a factor commonly examined by courts when confronting this issue.

A motion to reconsider is not the proper vehicle for the Debtor to first try and argue the

---

[1] Debtor also incorrectly characterizes the Court's ruling by stating that "the Court's final basis for relief under §362(d)(4)is that Debtor did not comply with statutory duties." Although the Court did make this finding, its basis for finding relief under §362(d)(4) was after considering the totality of all the evidence. (See page 11 of tentative ruling which was made the final ruling after the hearing).

pmultiple filings were all valid and in good faith.  Although completely lacking in merit, such an argument should have been raised at the time of filing his opposition.

The Debtor also argues that an error was made in connection with whether the Debtor had an equitable interest in the property.  (See paragraph 18, page 5, lines 14-25; page 6, lines 1-15).  Although the Court mentions in its ruling that Debtor did not provide evidence of an equitable interest, it does not appear that whether or not he had an equitable interest would have any effect on the lack of good faith of the debtor.  The Chings never argued that not having an equitable interest in the Calabasas Property was in any way related to the Debtor's bad faith.  When arguing the bad faith of the Debtor, this issue never arose.  Rather, it arose only in connection with the Chings' assertion that there was no violation of the automatic stay.  However, that issue became moot when this Court determined that based upon the plethora of evidence provided by the Chings, the automatic stay should be annulled, and it so ruled.

Debtor further argues the Court did not find the Illusion Ventures bankruptcy was filed in bad faith. (See paragraph 18, page 6, lines 16-21).  Admittedly, there may not have been an explicit finding of bad faith in the Court's order granting relief from stay in that case and the Chings have never stated otherwise.  Rather, they have simply recited factual information in relation to the Illusion case, including: 1) the Calabasas Property was transferred to Illusion without Movants' consent and for no consideration; 2) Illusion filed its case less than 30 minutes prior to the scheduled foreclosure sale; 3) there was only one non-priority unsecured creditor scheduled in the Petition; 4) no appropriate representative of Illusion ever appeared at either the initial meeting of creditors or any subsequent continued meeting of creditors; and 5) Illusion moved to convert its case to Chapter 11 despite having insufficient income to fund a plan.  Further, and without solicitation, this Debtor acknowledged his complicity in the case through his sworn Declaration.

It is respectfully submitted that in hindsight and with the benefit of all that has since occurred, this Court had concluded as of the hearing on the Ching Motion that the Illusion Ventures case was filed in bad faith, and expressing such a view at this time does not in any way constitute error.

Debtor argues that this Court "went beyond the record to consider some selected documents in the record in this case and in other cases to support its finding under section 362(d)(4)", but fails to

1    explain or support this statement and fails to provide any evidence to support this statement. (See

2    paragraph 19 of Motion to Reconsider).  As a result, no further response shall be provided.

3      B.    **Purported Errors of Fact in Granting Relief Under 11 U.S.C. §§362(d)(1) and (2)**

4       The motion was not granted pursuant to 11 U.S.C. section 362(d)(2), so any argument related

5    thereto is irrelevant and moot.

6      1.    <u>Issue of Equitable Interest</u>

7       The Debtor argues that he provided sufficient evidence to support that he held an equitable

8    interest in the Calabasas Property.  (See paragraph 23 of Motion to Reconsider).  The fact is, the

9    Debtor placed no evidence before the Court in its Opposition to the Chings' Motion for Relief from

10   Stay heard on June 20, 2018.  Further, the Chings submitted substantial evidence before this Court

11   that the Debtor did not have any equitable interest in the Calabasas Property.  The Debtor's argument

12   is of no consequence, however, as when the Court found that there was cause for relief under section

13   362(d)(1), there was no discussion relating to the issue of an equitable interest, as it does not appear

14   to have been a factor in the Court's finding that cause existed for relief from the automatic stay, and

15   thereafter the annulment of the stay.

16      The Debtor's argument that judgment liens recorded against an equitable interest do not attach

17   to the property also has no application here. (See paragraph 26 of Motion to Reconsider). The Chings

18   had a consensual lien against the Calabasas Property through the Deed of Trust they received.  As

19   such, no further argument or analysis will be provided.  As for the other liens (deeds of trust,

20   judgments or taxes), they attached to the real property and not the Debtor's equitable interest and

21   remain as liens unless otherwise foreclosed out by a senior lien holder.  Were Illusion Ventures ever

22   to regain title to the Property, all of the liens referred to by the Debtor would reattach in the same

23   amounts and order of priority as they existed previously.

24      The Debtor argues that Court erred as a matter of law when it concluded that Debtor lacks

25   equity in the property because he holds an equitable interest, not a legal interest.  (See paragraph 27 of

26   Motion to Reconsider). However, the Court never made such a conclusion.  It stated that Debtor did

27   not provide evidence to show he had an equitable interest.  It also found that even if the transfer to

28   Illusion Ventures did not occur, the Calabasas Property was overencumbered.   Further, even if

1  relevant, the time to have argued what the Debtor believes is a key issue (i.e., whether he held an

2  equitable interest in the Calabasas Property) was in the opposition to the Ching Motion, not for the

3  first time in his Motion to Reconsider.

4        2.    Issue of Equity

5       Debtor argues that there was also an error in relation to the determination that the Debtor did

6  not have any equity in the Property.  As mentioned above, since the Court did not grant relief from

7  stay under section 362(d)(2), the analysis as to equity under section 362(d)(2) is not relevant or

8  applicable.  The Court did, however, find that the Chings' interest in the Calabasas Property was not

9  adequately protected under section 362(d)(1).  In finding that the Chings were not adequately

10 protected under section 362(d)(1), the Court found that Debtor had not paid property taxes or made

11 any mortgage payments for the past two years.

12      Debtor argues that the Court relied on Debtor's initial schedules when examining the issue of

13 equity and not his amended schedules.  (See paragraphs 32-35 of Motion to Reconsider).  However, in

14 the Ching Motion, they did not rely upon or use the Debtor's initial schedules in connection with this

15 issue.  In turn, this Court presumably did not rely upon the Debtor's initial schedules, either.  The

16 Motion to Reconsider makes the statement in paragraph 35 that had the Court considered the Debtor's

17 amended schedules at Docket no. 113, the Court would have considered the Debtor's statement of the

18 Calabasas Property's fair market value, $2.1 million.  Critically, what the Debtor fails to acknowledge

19 is that his <u>initial schedules also valued the property at $2.1 million</u> and therefore, the Debtor's initial

20 schedules (Docket 10) and the amended schedules (Docket 113) valued the Calabasas Property

21 identically  This argument therefore makes no sense.  Instead, the Court apparently placed more

22 evidentiary value on the appraisal provided by the Chings than on the statement made by the Debtor

23 in his amended schedules with respect to the value of the Calabasas Property.

24      Any attempt by the Debtor to argue against the value provided by the appraisal supplied by the

25 Chings of $1.75[2] million must not be considered as it should have been addressed in the opposition,

26 and is therefore inadmissible at this time.  Further, Debtor could have timely provided a declaration of

27

28
  [2] The Chings reassert their objection to all evidence the Debtor seeks to include for consideration with this
Motion on the grounds that it is all late-filed opposition that could and should have been submitted by the
Debtor with his opposition to the Ching Motion.

1    an appraiser in opposition to the Ching Motion, or sought additional time to provide evidence in

2    contravention to that submitted by the Chings had he believed it appropriate. Being out of town a

3    part of the week is not a sufficient excuse for not submitting such evidence, and Debtor's counsel

4    could have sought an extension from opposing counsel, or failing that and the situation critical, from

5    the Court. Again, neither was even attempted in this case.

6        It is also evident from a review of the Debtor's appraisal that the Debtor or his counsel

7    contacted him well after the Ching Motion was filed, as Mr. McConnell's appraisal is dated July 10,

8    2018, six weeks after the Ching Motion was filed. The Chings submit, however, that even at a

9    disputed value of $2.2 million, based on the liens of record against the Property, there is not

10   "substantial" equity in the Calabasas Property as the Debtor asserts, and likely there is none at all. It

11   is for this reason that the Trustee, after investigating the value of the Calabasas Property, made no

12   effort to employ a broker to sell it. Should the Court elect to consider the late-filed appraisal

13   provided by Debtor, to which the Chings strongly object, the Chings have submitted a declaration of

14   Daniel Goldberg, who has twice appraised the Calabasas Property for the Chings, both of which were

15   provided to this Court, with the most recent appraisal of May 22, 2018 provided as an exhibit to the

16   Chings' June 20, 2018 Motion for Relief from Stay. The Goldberg Declaration succinctly critiques

17   the McConnell appraisal and his supporting Declaration, contending that houses in the actual gated

18   neighborhood of the Calabasas Property which were remodeled and still of lesser value were ignored,

19   while houses outside the Vista Point area which were remodeled, unlike the Calabasas Property, were

20   actually included, resulting in a grossly overinflated valuation for the Calabasas Property.[3]

21       This Court did not commit error as to the issue of whether the Chings were adequately

22   protected either. This is yet another argument being floated in an attempt to create an issue where

23   none exists, with the Debtor simply wasting judicial resources as a result of his previously failing to

24   file any substantive opposition to the Ching Motion.

25   ///

26   _____

27       [3] A review of Debtor's amended schedules shows that when Debtor most recently scheduled the
     Calabasas Property, he identified it as the separate property of his spouse, with him holding only an equitable
     interest. The question therefore arises whether he even has standing to argue whether there is equity in the
28   Calabasas Property, as it does not belong to him.

**C.**    **Purported Errors of Law**

Debtor argues that by annulling the stay, the Court reached "beyond the summary scope of a motion to terminate the pending Order to Show Cause". (See paragraph 41 of Motion to Reconsider). The Chings, however, clearly sought annulment of the stay as relief in their Motion, and the fact that the annulment may have the effect of defeating any alleged claim by the Debtor for contempt for violating the stay should have been contemplated by the Debtor, who again could have raised this issue in its opposition, but failed to do so.  Further, annulment of the stay is among the types of relief one can seek in the Court-approved forms used in the Ching Motion.  Finally, the Debtor provides no legal authority to support this position.

The Debtor also makes the argument that the Court "went beyond the record on the Motion to other sources in the Court record in this case or in other cases". (See paragraph 42 of Motion to Reconsider).  However, it is unclear how the Court did this, or how if it did, that created an error of law. The Debtor gives an example of the Court not relying on his amended schedules, but as set forth above, that argument is nonsensical.  The Court considered the evidence submitted by the Chings, which was extensive, to which no evidentiary objections were raised, and there is no evidence of the Court considering anything improper when rendering its decision.  Again, there was no error of law by this Court.

**D.**    **Purported Contradiction in the Ching Motion Concerning Amounts Owed**

In another attempt at seeking to simply raise confusion and hope for the best, the Debtor asserts that the Chings' Points and Authorities contradict Mr. Ching's declaration.  This is just another attempt by the Debtor to manipulate the facts. The points and authorities do state that the Chings were owed approximately $262,000 between missed monthly payments and property taxes owed at the time the Ching Motion was filed.  However, the statement, as provided in that context, was not meant to include all sums due and owing to the Chings, or incurred by them (i.e. accrued interest, late charges, foreclosures fees and attorneys' fees owing, which together approximated $342,412).  Together, these sums totaled of $619,028, as appears on page 7 of the Ching Motion.

**E.**    **Annulment**

The Court's Ruling states that annulment was warranted because based upon the totality of the

1    circumstances, it appears that the Debtor has not acted in good faith.  The Ching Motion provided a

2    thorough analysis of the factors applied in Fjeldsted, with each favoring annulment of the stay.

3    Again, the Debtor's opposition elected not to dispute or distinguish the holding or applicability of this

4    case, or try to argue that any of the factors analyzed might have favored the Debtor in any way.  The

5    Court's Ruling states that "[A] review of the Fjeldsted factors shows that annulment of the automatic

6    stay is warranted."  In so ruling, the Court found that the facts demonstrated an intention by the

7    Debtor to delay and hinder creditors in this case, and proceeded to identify a couple of those factors,

8    including his failure to pay the Chings, as well as his failure to comply with the bankruptcy laws.

9            In attempting to bolster his desperate case that an "error" was made, the Debtor states that the

10   Court used the term "several" years, rather than two years  (paragraphs 17 and 18 of the Motion to

11   Reconsider at page 4, line 26 and page 5, line 17).  The fact is that both in its tentative ruling and at

12   the time of the hearing, the Court used the word "two" years or "24 months" on at least two

13   occasions.  The evidence presented demonstrated the payments had not been made for two years, and

14   to claim the Court was somehow confused or believed otherwise when it used the word "several" is

15   simply an insult to the Court.

16           Straining credibility, the Debtor argues that the Court's finding that the circumstances reflect

17   an intention to hinder or delay is belied by the facts in the Ching Motion and the Debtor's declaration.

18   As mentioned, the Ching Motion analyzed the Fjeldsted case in detail, demonstrating that each of the

19   twelve factors weighed in their favor.  The facts set forth in the Ching Motion and the evidence

20   provided easily supported the Court's findings regarding annulment.  Moreover, as mentioned earlier,

21   the Debtor's declaration filed in support of his Motion to Reconsider does not contain any statements,

22   evidence or case law that could not have been submitted to the Court in opposition to the Ching

23   Motion and should not be considered at this time, as it is nothing but a thinly-disguised late

24   opposition, seeking to create something the Debtor can place before an appellate court if this Motion

25   is denied, since he otherwise has nothing but a two-page Opposition and a transcript of the June 20th

26   hearing in which his counsel, although provided the opportunity, failed in any way to argue against

27   this Court's detailed tentative ruling in favor of granting the Ching Motion.

28   ///

### III.

### **THE DEBTOR'S CONTINUED BAD FAITH – NEWLY DISCOVERED EVIDENCE**

Although the Ninth Circuit requires the Debtor to show good faith in connection with bringing a motion for reconsideration based upon excusable neglect pursuant to Rule 60(b)(1), the Debtor has instead elected to continue to act in bad faith. As this Court is aware, the Debtor also has an ongoing duty to disclose information about himself which is truthful and accurate and which will aid in the administration of his bankruptcy case, especially in those instances when it pertains directly to a question asked in his bankruptcy petition. *In re Searles*, 317 B.R. 368, 377-78 (9th Cir. BAP 2004). The Debtor has failed repeatedly to do this, concealing critical information from this Court, the Office of the United States Trustee and his creditors.

In addition to the evidence of bad faith provided in the Ching Motion, the Chings have discovered additional evidence of bad faith by the Debtor, which due to the concealment by the Debtor, them were unaware of at the time the Ching Motion was filed. It is provided now, however, as it further demonstrates the lengths to which this Debtor will go to conceal information that should have been included in his original Petition, or barring that, any and all of his numerous Amendments, as this information, if provided, would have undoubtedly changed the manner in which this case has been administered.

Specifically, the Debtor has another identity, M. Syamak Shafi-Nia, which Movants believe is his given name. Pursuant to the Declaration of Stan Ching, the Chings only recently determined this in attempting to locate a record of the Debtor, previously by his own admission a licensed attorney with the State Bar of California ("State Bar"), which searched under the name of Steven Nia did not exist. Knowing that records of even those attorneys that no longer practice law are kept in the State Bar directory, when searches under the Debtor's name failed to yield any information, further steps were taken at locating him. Although it took some time, Mr. Ching was ultimately able to locate a record of the Debtor under the name M. Syamak Shafi-Nia and determined that he had resigned from the State Bar, with numerous charges pending against him, on January 1, 1998. The charges remain pending in Case 97-Q-17116 in the event that the Debtor ever elects to reapply to be eligible to practice law within the State of California.

1    As the case remains pending against him as an administrative proceeding, the Debtor should

2    have identified, in Item 8 of his Statement of Financial Affairs, the still-pending proceeding, as

3    according to the State Bar, it is still open. Movants have obtained a complete certified copy of the

4    file, which identifies not less than five separate counts against the Debtor, all relating to alleged

5    claims involving purported violations of the Rules of Professional Conduct and California Business

6    and Professions Code Section 6068(d) and (m). Rather than contesting any of them, the Debtor opted

7    to surrender his license to practice law. A true and correct copy of the Debtor's surrender of his

8    license is attached to the Declaration of Alan I. Nahmias as Exhibit "A" and incorporated by this

9    reference. To the extent the Court desires to review the entire State Bar file, the Chings are prepared

10    to file it under seal with the Court and will have it present with them at the time of the hearing on this

11    matter.

12    Two additional items of note, as evidenced by the State Bar's record of M. Syamak Shafi-Nia:

13    1.) its reference to "Nia & Associates", having a mailing address in Beverly Hills, California; and 2.)

14    his law school as Western State University, the same school identified by Nia in the biography

15    discussed below as the law school that he attended. A copy of the California State Bar's information

16    page currently on file, listing the firm name Nia & Associates, along with a page from the State Bar's

17    disciplinary file containing Nia & Associates letterhead are collectively attached to the Declaration of

18    Alan I. Nahmias as Exhibit "B" and incorporated herein by this reference.

19    Learning of the voluntary surrender of the Debtor's law license under another name brought

20    about other searches under the same name, including one for prior bankruptcies that may have been

21    filed. This search identified three cases which the Debtor had filed while using the name M. Syamak

22    Shafi-Nia, all using a different Social Security Number, with the last four digits ending each time in

23    9511. This was of serious concern to the Chings as the Social Security Number reflected in each of

24    the two Petitions filed by the Debtor as Steven Nia end with the last four digits 7712. Because of the

25    age of these cases filed by M. Syamak Shafi-Nia, 1994, 1995 and 1996, the Chings were only able to

26    obtain certified copies of two of the three Petitions, with the third having been destroyed according to

27    bankruptcy archives where such records are kept. Movants have obtained certified copies of the

28    complete filed in Case No. 2:95-bk 17602-VZ and Case No. 2:96-bk-11018-VZ, and are also

prepared to file these with the Court under seal if desired, and will have certified copies of each of the

two available Petitions in Court at the time of the hearing on this Motion.  True and correct copies of

the face page of the two available Petition in Case No. 2:96-11018-VZ and the Chapter Plan in Case

No. 2:95-17602-VZ, with partially redacted Social Security Numbers, are attached as Exhibit "E" to

the Declaration of Alan I. Nahmias.

Having located this information, the Chings caused additional internet searches to be

conducted for the Debtor in connection with his recently-disclosed role with Wardour Studios,

www.wardourstudio.com.  The information produced was further enlightening, as it lead to a

biography of the Debtor, in which he discusses his role as not only the Chief Executive Officer of

Wardour Studios, but as its founder, adding that he "commands a wide range of business, creative and

strategic resources, providing them with expert leadership."  See Nia biography attached as Exhibit

"C" to the Declaration of Alan I. Nahmias.

This is contrasted with the Debtor's recent declaration of November 2, 2017, filed in support

of his Opposition to "Motion to Vacate Dismissal Order" [Docket 76] (see Request for Judicial

Notice filed concurrently herewith), when he states, under penalty of perjury:

> "22.  During my latest trip to China, I, through business entities[9] I manage and
> operate, have been engaged in the process of increasing our business sales and our
> product's portfolio as well as developing new LED lighting products.  These new
> products will have both commercial and individual consumer application.  For
> example, it is anticipated that new orders will be received totaling approximately
> $500,000.00 for the period from November 2017 through March 2018.  I have
> approximately 16 years of experience in the lighting business.  As a result of my
> efforts, it is anticipated that the companies will expand and their revenues will
> increase, which will positively affect my salary and bonuses, and I anticipate my salary
> will increase from $8,800 to $12,000 per month by year end, and that my quarterly
> bonuses will be in the amount of $10,000 or more.
>
> "[9] For example, I am the Chief Executive Officer and one of the three
> managers of Digital Light, LLC ("Digital Light").  A true and correct copy of Digital
> Light's company's profile is attached as Exhibit B hereto.",

not discussing his work in the entertainment field for twenty years.  Seemingly, in trying to show how

his finances had improved, the Debtor would have made at least a passing reference to his other

career, unless of course, he wished to conceal it.

Interestingly, the Debtor's resume twice discusses his never previously disclosed experience of over 20 years in the entertainment industry, and also includes a statement that he was originally an entertainment attorney, adding later that he obtained his juris doctor degree from Western State University (the same law school as M. Syamak Shafi-Nia) and served as a member of the California State Bar for over ten years. No mention of his resignation from the Bar with charges pending is included however.

In the event that the Court requires further evidence of the life led by the Debtor while owning nothing, but serving as Wardour's unpaid CEO, attached to the Declaration of Alan I. Nahmias as Exhibit "D" are documents taken from internet searches related to Wardour Studios showing the Debtor receiving a Producer's Credit for the films Spacetime Warriors, Crossroads to Shaolin, Starlight, The Fault Line and Paparazzi the Starmakers, and photographed at Wardour's $1,000 per ticket pre-Oscar party in Beverly Hills, just prior to this year's Academy Awards, an article about the event, as well as photos and articles featuring Steven Nia, as opposed to M. Syamak Shafi-Nia, as Chairman of World Film Institute at various locales around the world.

The Debtor's biography adds that he currently serves as Chairman of the World Film Institute. A search with the California Secretary of State did not locate a connection to the Debtor's affiliation with the entity. However, through a Westlaw search, the Debtor's former name turned up a hit showing that Syamak Shafi-Nia is currently President of the Syamak World Film Institute at 1880 Century Park East, Suite 14, Beverly Hills, California 90210. A true and correct copy of the Westlaw search results is attached the Declaration of Alan I. Nahmias as Exhibit "F" and incorporated herein by this reference. Worth noting is that the State Bar file on Syamak Shafi-Nia contains at least one letter from an attorney dealing with attorney Shafi-Nia at the time, who was conducting business out of the same address. A redacted copy of that correspondence is attached to the Declaration of Alan I. Nahmias as Exhibit "G" and incorporated herein by this reference.

Taken together, this information leaves no doubt that Steven Nia and M. Syamak Shafi-Nia are the same person, even if they are using two different Social Security Numbers and didn't want anyone to realize what they were up to.

The Chings' search also located two current lawsuits filed by the Debtor, one pending at the

1  time this bankruptcy case was filed, Case No. LC103891 against a tenant of the Debtor, whom he had

2  previously identified as paying $2,000 a month for his then current use of a portion of the Medley

3  Drive property, but not scheduling either the law suit that had been filed or the Judgment that had

4  been obtained since the case was filed.  (A true and correct copy of that Judgment is attached as

5  Exhibit "H" to the Declaration of Alan I. Nahmias and remains of record to this date.)

6          Additionally, the Debtor has recently filed a companion state court lawsuit, to the adversary

7  proceeding he filed against US Bank, through Joseph Kerendian, who regularly files state court

8  lawsuits alleging wrongful foreclosures for this Debtor and happens to be the attorney of record in the

9  suit filed by Illusion Ventures and the Debtor against the Chings, among others.  A true and correct

10  copy of the Debtor's First Amended Complaint in Los Angeles Superior Court Case No. LC107294 is

11  attached as Exhibit "I" to the Declaration of Alan I. Nahmias and incorporated herein by this

12  reference.

13          It is undetermined as to why the Debtor has as of yet failed to amend his Schedules to disclose

14  the existence of either of these lawsuits, the Judgment, the additional name by which he is known, the

15  pendency of the State Bar action against him, the apparent use of two Social Security Numbers or his

16  current and ongoing/renewed use of what the Chings believe is his birth name.  Whatever the

17  explanation might be however, there is little doubt that all of this information has been concealed on

18  an ongoing basis, in bad faith, thereby providing this Court with further reason to deny his Motion for

19  Reconsideration.

20                                      **IV.**

21                  **RELIEF IS NOT APPROPRIATE PURSUANT TO FRCP 59**

22          Debtor also appears to be arguing that relief under Rule 59(e) is warranted due to newly

23  discovered or previously unavailable evidence in the form of the appraisal he has submitted.  (See

24  paragraph 32 of Motion to Reconsider). The standard for introduction of new evidence post trial is

25  provided in FRCP 60(b)(2) which allows consideration of newly discovered evidence that with

26  reasonable diligence, could not have been discovered previously. *In re Gonzales*, 2014 WL 1338107

27  (Bankr. N.D. Cal. 2014).  However, any evidence in the form of an appraisal was previously

28  available. As previously mentioned, Debtor could have provided a declaration of an appraiser in

1    opposition to the Ching Motion, or sought additional time to provide an appraisal or other evidence.

2    Being out of town a part of the week is not a sufficient excuse for not submitting such evidence, or at

3    least for not seeking an extension of the deadline to respond.

4              Finally, even if the Court were to consider the appraisal as new evidence, the Debtor did not

5    show reasonable diligence in retaining the appraiser as the appraisal was not performed until forty-

6    one days after receiving notice of the Ching Motion.

7              Debtor also argues that manifest injustice would result if his Motion is not granted.  (See

8    paragraph 54 of Motion to Reconsider). Debtor argues that if the Court's order is not reconsidered,

9    the Debtor will lose title to the real estate, removing him from his home and impact his fresh start.

10   The Court is reminded that it was Illusion Ventures that held record title to this Property when it was

11   foreclosed upon, after it had been fraudulently transferred by the Debtor and his non-filing spouse for

12   no consideration and with no notice to the Chings. Additionally, the Debtor claimed in his most

13   recent Amended Schedules that his wife owned the Calabasas Property as her separate property, and

14   as a result, he cannot loose title, as he has previously disavowed owning it.  Further and contrary to

15   the Debtor's assertions, it is the Chings who have and will continue suffer injustice if this Court's

16   Order of June 28, 2018 is vacated or otherwise amended.  The Chings have continued to service the

17   underlying debt secured by the Calabasas Property in addition to paying certain property taxes that

18   have accrued, at a tremendous financial burden.

19             Currently, the Calabasas Property requires carrying costs regularly absorbed by the Chings of

20   approximately ten thousand dollars per month, which they have dutifully paid throughout this entire

21   period, all while the Debtor's family and perhaps even the Debtor reside for free at the Calabasas

22   Property.  The Debtor does not even attempt to dispute this, because he cannot.  The Chings have also

23   paid homeowner association dues and substantial legal fees during this time period.  In the meantime,

24   Debtor has failed to make <u>any</u> payments for more than two years. No harm, injustice or prejudice

25   would result to the Debtor if this Court denied the Debtor's Motion.

26             He has already manipulated the system to allow his family to live at the Calabasas Property

27   for more than two years for free, while he has managed to live at the Medley Drive Property, pulling

28   off the same scam for over five years without making mortgage payments, but collecting $2,000 per

1  month from tenants who leased out rooms at that property, while to this day, failing to disclose a

2  prepetition judgment he had obtained against that tenant.

**V.**

## THE DEBTOR CANNOT OBTAIN RELIEF PURSUANT TO FRCP 60(b)(1)

The Debtor asserts entitlement to relief from the Order can be granted due to his own excusable neglect. FRCP Rule 60(b)(1). The determination of whether neglect is excusable depends on four factors: 1) the danger of prejudice to the opposing party; 2) the length of the delay and its potential impact on the proceedings; 3) the reason for the delay; and 4) whether the movant acted in good faith. *Pioneer Inv. Serv. Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489 (1993). Each of these factors is analyzed below.

### Danger of Prejudice to the Opposing Party

The Chings would be prejudiced for each of the same reasons set forth above if this Court were to grant the Debtor's Motion. The Debtor has been intentionally disregarding his financial obligation to the Chings for over two years now and it would be highly inequitable, let alone financially devastating to the Chings, were this Court to reward his bad faith tactics and manipulation of the Bankruptcy Code. Further, in the event that there is any argument regarding the amounts he should have been paying the Chings, they can be litigated in the pending state court litigation that remains pending.

### The Length of Delay and its Potential Impact on the Proceedings

Debtor's bankruptcy has been pending for over fourteen (14) months now, and when including the Illusion Ventures case that preceded it, the Calabasas Property has wrongfully been withheld from the Chings for nearly sixteen (16) months. The Chings have waited, while they were not receiving payments, for the Chapter 7 Trustee to conduct his examination, and after he determined there was not sufficient equity in the Calabasas Property, they moved again for relief from stay. In the interim, they weathered another Chapter 11 filing by the Debtor while this case was briefly dismissed as a result of the Debtor's inaction. The Debtor then chose to file nothing but a two-page opposition with no supporting evidence, and the Ching Motion was granted on June 20, 2018. Throughout this time, the Chings have continued to patiently litigate before this Court while

1    simultaneously attempting to navigate through the highly elaborate web of deceit created by the

2    Debtor, in an attempt by him to avoid the discovery of his past conduct, as well as his current assets

3    hidden overseas or in the name of his non-filing spouse, all at a tremendous financial cost to

4    themselves.

5        Reason for the Delay

6        The Debtor submits that the reason for filing this Motion is that he was out of the country, in

7    China, which has tended to be a frequent excuse for Mr. Nia throughout his bankruptcy case when

8    missing deadlines or creditor meetings have been missed.  However, as stated earlier, the Chings

9    submit that the reason for the delay was not due to the Debtor being out of the country at all, as at

10   least one conference call to discuss settlement was held between the Chings' counsel, the Debtor and

11   his counsel during this period.  Additionally, the Debtor sent numerous texts to Mr. Ching during this

12   time, demanding to conduct settlement negotiations.  See Declaration of Stanley K.S. Ching attached

13   in support hereof.  Copies of these texts (true and correct copies of which are attached as Exhibit "A"

14   to the Declaration of Stanley K.S. Ching and incorporated herein by this reference) are not being

15   provided in any way to divulge the content of settlement negotiations, which the Chings and their

16   counsel are well aware are inadmissible, but only to demonstrate that the Debtor was fully capable of

17   communicating with, and did communicate with, the United States from China, any time he desired.

18   As such, the Debtor's failure to file a more robust opposition was not neglect, or if neglect, certainly

19   was not excusable.  Rather, his failure to file anything further was a conscious and intentional

20   decision which should not now be rewarded in any way.

21       Whether Debtor Acted in Good Faith

22       For each the reasons stated above, plus the newly discovered evidence presented in this

23   Opposition, Debtor has not acted in good faith throughout the entire case, let alone in connection with

24   the events leading up to this Motion to Reconsider.  Perhaps recognizing this, the Debtor's Motion to

25   Reconsider barely discusses this factor.

26       Based on the above, there was no neglect at all, and all actions by the Debtor and his counsel

27   were knowing, intentional and deliberate.  In the event, however, that the Court finds there was

28   somehow neglect, either on the part of the Debtor or his counsel, it should not find that the neglect

1    was excusable, as all factors weigh in favor of the Chings, and the Motion should be denied.

2         "Although Rule 59(e) permits a district court to reconsider and amend a previous order, the

3    rule offers an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation

4    of judicial resources." Kona Enterprises, Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000).

5    Indeed, "a motion for reconsideration should not be granted absent highly unusual circumstances,

6    unless the district court is presented with newly discovered evidence, committed clear error, or if

7    there is an intervening change in the controlling law." 389 Orange Street Partners v. Arnold, 179

8    F.3d 656, 665 (9th Cir. 1999).  A Rule 59(e) motion may not be used to raise arguments or present

9    evidence for the first time when they could reasonably have been raised earlier in the litigation.  Kona

10   Enterprises, Inc. v. Estate of Bishop, 229 F.3d at 891 (9th Cir. 2000).

11   **VI.**

12   **<u>CONCLUSION</u>**

13        For each of the reasons stated herein, the Chings submit that the Court has not been presented

14   with newly discovered evidence, the Court has not committed clear error, and there has not been an

15   intervening change in the controlling law. Wherefore, the Chings hereby request that the Court deny

16   the Debtor's Motion to Reconsider and grant the Chings such other and further relief as this Court

17   may deem appropriate.

18

19   Dated: August _8_, 2018                    MIRMAN, BUBMAN & NAHMIAS, LLP

20

21                                             By: _____
                                                   ALAN I. NAHMIAS
22                                                 SCOTT H. NOSKIN
                                                   Attorneys for Movants STANLEY K.S. and
23                                                 CAROLYN J.CHING

24

25

26

27

28

{00519256}{00519256}{00519256}                    24

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
21860 Burbank Boulevard, Suite 360, Woodland Hills, CA  91367

A true and correct copy of the foregoing document entitled (*specify*):   OPPOSITION TO DEBTOR'S MOTION FOR NEW TRIAL AND FOR RECONSIDERATION OF ORDER GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY (REAL PROPERTY); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
  August 8, 2018   , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Raymond H. Aver ray@averlaw.com
Stephen F Biegenzahn efile@sfblaw.com
Stephen L Burton steveburtonlaw@aol.com, ellie.burtonlaw@gmail.com
Russell Clementson russell.clementson@usdoj.gov
Steven R Fox emails@foxlaw.com
Todd S Garan ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
Amy L Goldman goldman@lbbslaw.com
David Keith Gottlieb (TR) dkgtrustee@dkgallc.com,
dgottlieb@iq7technology.com,rjohnson@dkgallc.com,akuras@dkgallc.com
Scott Lee slee@lbbslaw.com
Alan I Nahmias anahmias@mbnlawyers.com, jdale@mbnlawyers.com
Scott H Noskin snoskin@mbnlawyers.com, aacosta@mbnlawyers.com
Gwen H Ribar gribar@wrightlegal.net
Lovee D Sarenas lovee.sarenas@lewisbrisbois.com
Edward G Schloss egs2@ix.netcom.com
Edward A Treder cdcaecf@bdfgroup.com
United States Trustee (SV) ustpregion16.wh.ecf@usdoj.gov
Darlene C Vigil cdcaecf@bdfgroup.com
Pamela Kohlman Webster pwebster@buchalter.com, smartin@buchalter.com

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

---

{00511252}This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) ____August 8, 2018____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Victoria Kaufman
United States Bankruptcy Judge
21041 Burbank Boulevard, Bin on 1st Floor Outside Entry to Intake Section
Woodland Hills, CA  91367

(via personal delievery)

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 8, 2018 | JACQUELINE DALE | |
|---|---|---|
| Date | Printed Name | Signature |

{00511252}This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    **F 9013-3.1.PROOF.SERVICE**