THE FOX LAW CORPORATION, INC.
Steven R. Fox, SBN 138808
17835 Ventura Blvd., Suite 306
Encino, CA 91316
(818)774-3545; FAX (818)774-3707
srfox@foxlaw.com

Attorneys for Steven Nia, Debtor

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>Steven Nia,<br><br>Debtor. | CASE NO: 1:17-bk-11495-VK<br><br>CHAPTER 7 (converted from Chapter 11)<br><br>RESPONSE TO OPPOSITION TO DEBTOR'S MOTION FOR NEW TRIAL AND FOR RECONSIDERATION OF ORDER GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY (REAL PROPERTY)<br><br>Date: August 22, 2018<br>Time: 9:30 a.m.<br>Place: Courtroom 301<br>U.S. Bankruptcy Court, 21041 Burbank Blvd., Woodland Hills CA<br><br>Petition filed on June 4, 2017 |

To the Honorable Victoria Kaufman, U.S. Bankruptcy Judge:

**COMES NOW** the Debtor with his Response.

The Opposition contains argument relevant to the Motion for Reconsideration but also irrelevant attempts to smear the Debtor.

As to the latter, the irrelevant and the smearing, the Chings imply that Mr. Nia leads a double life but the amended Schedules (docket no. 113) as well as the initial Schedules discuss much of this. The other name the Chings pulled up is an old name unused for many years. There was no obligation to list an old prior name from many

- 1 -

1  years ago. Also, the Chings allege facts concerning the Debtor's payment of
2  mortgage payments at the Medley property as a ground to argue that this Court acted
3  properly when it lifted the stay here as to the Calabasas property. (Oppo. pgs. 4-5,
4  lines 27-3)

5      As to the other aspect of the Opposition, legal argument, that is addressed
6  below.  One key point: The Motion for Reconsideration focuses on what the Court
7  found and what the Court concluded, not on what the Chings argued in their Motion
8  for Relief from the Stay.  Mr. Nia's Motion properly focuses on what the Court found.
9  The Chings attempt to move the focus of Mr. Nia's Motion to the Chings' Motion for
10 relief from stay but the focus of Mr. Nia's Motion is on what the Court found, not what
11 the Chings argued.

12 1.    <u>Relief under §362(d)(4)</u>.

13     In his Motion, Mr. Nia pointed to the five facts which the Court relied on to
14 determine that relief under §362(d)(4) was appropriate and contended that these
15 facts were not as the Court believed them to be.  For example, the Court found, as
16 part of granting relief under (d)(4) that the Debtor had not complied with his statutory
17 duties.  However, the Court's own record reflects the opposite.  Mr. Nia also noted
18 that the Ching's Motion on its own adequately demonstrated the existence of his
19 equitable interest in the Calabasas property.  He also showed that in the previous
20 Illusions Venture case, the Court did not make a finding that the case had been filed
21 in bad faith while the Court grounded part of its decision to grant relief under (d)(4)
22 based on the erroneous factual finding that the Court had previously found that the
23 Illusions Venture case had been filed in bad faith.

24     In essence, the factual finding the Court relied on to find an intent under (d)(4)
25 was incorrect. In response, the Chings point to the totality of the circumstances.  The
26 Chings may clothe the findings under the heading "totality of the circumstances" but
27 the Court relied on specific facts which the Chings really do not refute.
28

The Opposition contends that the Debtor should have argued at the time of the hearing on the motion for relief from stay that the Court was incorrect. The Opposition ignores the fact that the Court's tentative was posted shortly before the hearing and after all pleadings were filed. Parties are not required to rebut each and every point a Court may make at a hearing as a precondition to seeking relief under Rules 9023 and 9024.

2. <u>Relief Under §362(d)(1) and (d)(2).</u> [1]

The Court explicitly found in its tentative that cause existed to lift the stay for lack of adequate protection. The single basis stated in the tentative at §D was that the Debtor had not made mortgage payments or paid the property taxes for two years. (page 9, §D)

To come to this conclusion, the Court considered not only the Chings' Motion but it also considered the Debtor's original schedules. In considering the Debtor's original schedules, the Court buttressed its ruling of a lack of equity based on the Debtor's statements in his original schedules.

The Court did not consider the Debtor's amended Schedules (docket. No. 113). Had the Court done so, then the Court would have seen the Debtor's statement of debt against the property in docket no. 113 which would have reflected considerable equity. This constitutes an error of fact which lead to an error of law. [2] (See Motion for Reconsideration, page 11 of 131, para. 33)

---

[1] The Chings' Opposition correctly notes that the Court did not grant relief under §362(d)(2) and the Court's tentative notes that the request for relief under §362(d)(2) was moot.

[2] The argument may be made that the Court was not required to look beyond the Chings' motion and the Debtor's opposition. Whether that argument is correct, the Court <u>did</u> go beyond the Chings' Motion and the Debtor's Opposition and so is required to look at all of the relevant record including any amendments.

1    Had the Court considered docket no. 113, the Court would have concluded that the Chings' interest in the property (as the holder of a wrap around) was adequately protected. The Court would not have granted relief under §362(d)(1) notwithstanding the lack of payment of the mortgage and taxes for two years.

The Chings argue that they did not rely on the Debtor's original schedules as part of their motion and so the Court presumably did not rely on the Debtor's original schedules either. (Opposition, page 12, lines 13-15) However, in the tentative, the Court relied on the original schedules to determine lack of adequate protection.[3]

The Chings dance away from one fact they cannot rebut - the fact that Mr. Nia brought suit against the Chings prepetition on the basis that the Chings were overcharging him. Mr. Nia believes these overcharges were deceptive, based on misrepresentations and were deliberate. As noted in Mr. Nia's declaration supporting the Motion for Reconsideration, he had paid just under $500,000 in mortgage payments to the Chings and in property taxes to the County until he learned that the Chings were deliberately overcharging him.

---

[3]   As to the property's value, the Chings assert that the property's value is $1.75 million, the value their appraiser ascribed to the property. In their Opposition, the Chings do not address Mr. Nia's statement in his declaration, that his wife and he had purchased the property in 2011 for about $1.6 million. 2011 was very close to the bottom of the market. If the Chings are to be believed, the property's value has barely budged during 7 years of the hottest appreciation in the real estate market. It may beyond the scope of Mr. Nia's Motion but the Chings' position is suspect. Also suspect is their attack on Mr. Nia's appraisal which concludes that the property has appreciated in an amount consistent with the Southern California real estate market in this decade.

In arguing that the property has appreciated only 8% in 8 years of extreme appreciation in real estate values, the Chings' appraiser argues against reality and hurts his credibility.

Case 1:17-bk-11495-VK    Doc 179    Filed 08/15/18    Entered 08/15/18 12:33:01    Desc
Main Document    Page 5 of 10

Separately, as part of its analysis, the Court concluded that the Debtor could not enjoy equity in the property. The Court made this determination on the basis that if the Debtor held an equitable interest in the real property, the Debtor could not enjoy equity in property in which he held merely an equitable interest. The record before the Court, the Chings' evidence, reflected evidence demonstrating that Mr. Nia holds an equitable interest, e.g., years of paying the mortgage payments and the property taxes. Mr. Nia's Motion reflects a test to demonstrate an equitable interest and, based on the evidence in the Chings' Motion, Mr. Nia holds an equitable interest in the Calabasas property.

3. <u>Annulment of the Stay</u>.

Mr. Nia contended in his Motion that the factual basis for the annulment of the stay was improper. The basis there was (1) the Illusions Ventura case affected the property, (2) the Court had terminated the stay in that case due to that case being filed in bad faith, (3) the circumstances indicate an intent to hinder or to delay, (4) the Debtor had not made mortgage or tax payments for several years and (5) the Debtor did not comply with his statutory duties.

Mr. Nia's Motion went through each of these five grounds and showed that four of the five facts were not correct (the one exception being that the Illusions Venture case did affect the Calabasas property). Mr. Nia's Motion also noted the fact that the Chings' motion discussed the parties' attempt to negotiate a settlement. A key point to take from this is that the behavior which this Court could ascertain from the Chings' Motion (Mr. Nia's payment of perhaps $500,000 over time to the Chings, payment of taxes and mortgage payments over a period of years until disputes arose and then litigation ensued) is not that of an intent to hinder or delay but instead behavior of someone intent on paying obligations interrupted by the parties' dispute.

In opposition, the Chings focus on the <u>Fjelsted</u> factors. The Court, in its tentative (docket no. 155, page 8 of 11) listed the 12 factors from <u>Fjelsted</u> and then focused on some of the factors. As noted above, the Debtor, using the record from

1 | the Chings' Motion, showed that the Court's findings in the tentative, based on the
2 | Fjelsted factors, were factually incorrect. The Court made clear errors of fact to
3 | support its determination to annul the automatic stay.

4 |     4.   <u>The Alleged Continuing Bad Faith</u>.

5 | In their Opposition, the Chings allege Mr. Nia has or had another name, M.
6 | Syanmak Shafi-Nia. It is Mr. Nia's former name. He has not used the name for many
7 | years, he has conducted no business under this name for many years, he has not
8 | owned assets under this name for many years and he has not owed debt under this
9 | name for many years.

10 | The bankruptcy petition requests names used in only the past 8 years. Mr. Nia
11 | has not used the name M. Syanmak Shafi-Nia for much longer than 8 years and so
12 | he did not include this former name.

13 | When Mr. Nia changed his name in the 1990s, he applied to the Social
14 | Security Administration and changed his social security number.

15 | The Chings also point to what they say are pictures of Mr. Nia at a fancy party.
16 | He was there. He is an executive for the Wardour Studios which threw an Oscar
17 | party. As the Internet item in the Chings' papers notes, Wardour had an Oscar's
18 | viewing party and the guests, who paid $1,000 each to attend, enjoyed a four course
19 | meal at a hotel. Given a charge of $1,000 per person to attend this party, it seems
20 | evident that the entry charge (plus sponsorships) paid for the event. The article was
21 | a puff piece, not a serious work of journalism. Notably absent from the article (and
22 | from the Chings' Opposition) is a listing of celebrities who attended or how much the
23 | celebrities were paid to attend. (Opposition, Exhibit "D", page 20 to page 25).

24 | Also in Exhibit "D" to the Opposition, are pages taken from the Internet (at
25 | pages 16 to 19) also purporting to concern the same party. The celebrities at pages
26 | 16 to 19 appear to be Chinese movie people who may (or may not) be prominent.

27 | Also in Exhibit "D" to the Opposition, are additional pages taken from the
28 | Internet (pages 13-14), consisting of Mr. Nia's IMDB page. This is a website where

people in the entertainment industry create their profiles. They show their success and/or make it appear as though they are successful. Mr. Nia's IMDb page shows five credits. Of these, three are dated in 2018 (post-petition), one is dated in 2016 and one is undated. The five are either in development which means that if money can be raised they may be developed or they were never launched. None is in production. None has brought in revenue.

Mr. Nia's entertainment involvement is discussed in his Statement of Financial Affairs (docket no. 113, page 49 of 59) with the naming of three entertainment companies including Wardour Studios, Inc. Though the Chings accuse Mr. Nia of hiding his involvement in the entertainment industry, he has not.

What the party materials and the IMDB pages have to do with the Motion for Reconsideration is unclear. It is inappropriate mudslinging. It is irrelevant to the issues at hand. The inference should be drawn that the Chings believe that their legal argument is weak and that therefore they need to sling mud in order to win.

5. <u>Conclusion</u>.

One final note. In the Opposition the Chings make unsupported accusations and will make unwarranted inferences. For example, they state that the meeting of creditors has not been completed and therefore this means that Mr. Nia is acting in bad faith. The fact that it has not been completed can be a sign of any number of things including the trustee's decision to continue the meeting in case the trustee has additional questions he wants to ask of Mr. Nia. Inferences cannot be drawn from insufficient facts.

Mr. Nia urges the Court to grant the relief requested in the Motion for New Trial and for Reconsideration and vacate its prior Order terminating the automatic stay.

1 | Dated: August 15, 2018

Respectfully submitted,

The Fox Law Corporation, Inc.

_____
Steven R. Fox, attorney for Debtor
Steven Nia

| | |
|---|---|
| In re<br>　　Steven Nia<br>　　　　　　　Debtor(s) | Chapter 7<br>Case No.: 1:17-bk-11495-VK |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **17835 Ventura Blvd., Suite 306, Encino, CA 91316**

A true and correct copy of the foregoing document entitled ***Response To Opposition To Debtor's Motion For New Trial And For Reconsideration Of Order Granting Motion For Relief From Automatic Stay (Real Property)*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>**August 15, 2018**</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Former Counsel for Debtor:** Raymond H. Aver ray@averlaw.com, **Counsel for Creditors, Carolyn J. Ching and Stanley K.S. Ching:** Stephen F Biegenzahn efile@sfblaw.com, **Former Counsel for Debtor:** Stephen L Burton steveburtonlaw@aol.com, ellie.burtonlaw@gmail.com, **Counsel for U.S. Trustee:** Russell Clementson russell.clementson@usdoj.gov, **Counsel for Debtor:** Steven R Fox emails@foxlaw.com, **Unknown:** Todd S Garan ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com; tgaran@aldridgepite.com, **Counsel for David Gottlieb:** Amy L Goldman goldman@lbbslaw.com, **Trustee:** David Keith Gottlieb (TR) dkgtrustee@dkgallc.com, dgottlieb@iq7technology.com, rjohnson@dkgallc.com, akuras@dkgallc.com, **Counsel for David Gottlieb:** Scott Lee slee@lbbslaw.com, **Counsel for Creditors, Carolyn J. Ching and Stanley K.S. Ching:** Alan I Nahmias anahmias@mbnlawyers.com, jdale@mbnlawyers.com, **Counsel for Creditors, Carolyn J. Ching and Stanley K.S. Ching:** Scott H Noskin snoskin@mbnlawyers.com, aacosta@mbnlawyers.com, **Unknown:** Gwen H Ribar gribar@wrightlegal.net, **Counsel for David Gottlieb:** Lovee D Sarenas lovee.sarenas@lewisbrisbois.com, **Counsel for FCI Lender Services, Inc.:** Edward G Schloss egs2@ix.netcom.com, **Unknown:** Edward A Treder cdcaecf@bdfgroup.com, **Trustee:** United States Trustee (SV) ustpregion16.wh.ecf@usdoj.gov, **On behalf of U.S. Bank:** Darlene C Vigil cdcaecf@bdfgroup.com, **On behalf of Buchalter Nemer:** Pamela Kohlman Webster pwebster@buchalter.com, smartin@buchalter.com

☐ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>:**
On <u>**August 15, 2018**</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Honorable Victoria Kaufman, U.S. Bankruptcy Court, 21041 Burbank Blvd., Suite 354, Woodland Hills, CA 91367

☐ Service information continued on attached page

3. ~~SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on *August 15, 2018*, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.~~

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 15, 2018 | Sandy Cuevas | *[signature]* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.